```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/31/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
NEXT PHASE DISTRIBUTION, INC.,          :
                                        :
                        Plaintiff,      :         12 Civ. 3755 (VM)
                                        :
              - against -               :         **DECISION AND ORDER**
                                        :
JOHN DOES 1-27,                         :
                                        :
                        Defendants.     :
----------------------------------X

**VICTOR MARRERO, United States District Judge.**

　　　Plaintiff Next Phase Distribution, Inc. ("Next Phase")
seeks leave from the Court to take discovery prior to
service of process ("Motion for Discovery," Docket No. 5)
in order to identify John Doe defendants (the "John Does")
who allegedly downloaded Next Phase's copyrighted
pornographic film ("Motion Picture") from the Internet
without authorization. On May 29, 2012, before evaluating
Next Phase's request, the Court ordered Next Phase to show
cause why the Court should not sever John Does 2-27. ("May
2012 Order," Docket No. 8.) On June 1, 2012, Next Phase
responded to the Court's May 2012 Order. (Docket No. 9.)
For the reasons discussed below, the Court, <u>sua sponte</u>,
exercises its discretion pursuant to Rules 20(b), 21, and
42(b) of the Federal Rules of Civil Procedure ("Rules
20(b), 21, and 42(b)") to sever and dismiss without
prejudice all claims against John Does 2-27 in accordance

with the procedures described below. Further, the Court GRANTS Next Phase's Motion for Discovery and issues a protective order with respect to John Doe 1.

## I.   BACKGROUND[1]

A.   BITTORRENT

Next Phase is a motion picture production company and is the registered copyright owner of the Motion Picture. Next Phase alleges that, between January and March of 2012 and without permission or consent, the John Does illegally downloaded, reproduced, and distributed at least a substantial portion of the Motion Picture using BitTorrent, a peer-to-peer protocol that allows users to transfer large files on the Internet.

According to Next Phase, the BitTorrent process begins when a user decides to share a file (a "seed") on the Internet.   BitTorrent then breaks the seed down into different pieces that can be downloaded in parts by other users ("peers").   Peers can download pieces of the seed from any peer who has already downloaded the entire seed.

---

[1] The factual and procedural summary below is derived from the following documents and any exhibits attached thereto: Complaint (Docket No. 1); Motion for Discovery (Docket No. 5); Mem. of Points and Authorities in Support of Mot. for Leave to Take Discovery Prior to Rule 26(f) Conference (Docket No. 6); May 2012 Order (Docket No. 8); Response to Show Cause Order (Docket No. 9).   Except where specifically referenced, no further citation to these sources will be made.

Once a peer downloads the entire seed, BitTorrent reassembles the pieces so that the peer can view the entire file. Other peers can also begin downloading parts of the seed from the peer who now has the completed file. Through this process, every downloader also becomes an uploader of the transferred file. The peers that share the same seed file, and are downloading and uploading that file to and from each other, are collectively called a "swarm." Each swarm member can be identified by a unique alphanumeric "hashtag" number that accompanies every piece of the seed file.

Next Phase used such a hashtag number to identify and join the 27 John Does in this case. Next Phase alleges that each John Doe downloaded a seed file with the same hashtag and, therefore, is presumably part of the same swarm. Next Phase further alleges that, based on geo-location technology, each John Doe is within the geographic jurisdiction of the Court. However, because Next Phase has identified John Does only by their Internet Protocol ("IP") addresses, Next Phase has requested leave from the Court to subpoena the defendants' Internet Service Providers ("ISPs") in order to identify each John Doe.

- 3 -

B.   THE MAY 2012 ORDER

In a recent decision in this District in a very similar case involving BitTorrent and multiple John Doe defendants, Judge Colleen McMahon decided to sever John Does 2-245.   See Digital Sins, Inc. v. Does 1-245, No. 11 Civ. 8170, 2012 WL 1744838, at *2 (S.D.N.Y. May 15, 2012) ("Digital Sins 245").   Judge McMahon determined that joinder is not proper simply because individual defendants committed the same type of violation in the same way and reasoned that no litigation economy would be gained from joining 245 individual defendants who participated in separate and discrete acts.   Id.   In light of Judge McMahon's decision, this Court ordered Next Phase to show cause why the Court should not also sever John Does 2-27 before evaluating Next Phase's Motion for Discovery.

In response, Next Phase contends that the Court should not sever the John Does.   Next Phase argues that the John Does have been properly joined because they participated in the same swarm and illegally traded the same copyrighted file of the Motion Picture.   Specifically, Next Phase alleges, "because of the nature of the torrent software, [the John Does] engaged in a series of related transactions because in order to download a movie (or parts of it), one

- 4 -

must permit other users to download and/or upload the file from one's own computer." (Compl. at 5.)

## II. **LEGAL STANDARD**

### A. PERMISSIVE JOINDER

Joinder of defendants is permissible if (1) a "right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" ("transaction-or-occurrence standard"), and (2) a common question of law or fact will arise in the action. Fed. R. Civ. P. 20(a)(2). While "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties," United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966), courts maintain "broad discretion" concerning whether to permit joinder, In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288, 2003 WL 1563412, at *3 (S.D.N.Y Mar. 25, 2003).

### B. DISCRETIONARY SEVERANCE

Even if the requirements of permissive joinder are met, courts maintain the discretion to sever defendants under Rules 20(b), 21, and 42(b). See, e.g., Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); see also Digital

- 5 -

Sins 245, 2012 WL 1744838, at *2; In re BitTorrent Adult Film Copyright Infringement Cases, Nos. 11 Civ. 3995, 12 Civ. 1147, 12 Civ. 1150, 12 Civ. 1154, 2012 WL 1570765, at *11 (E.D.N.Y. May 1, 2012).  In making this determination, courts evaluate whether permissive joinder would "comport with the principles of fundamental fairness," prejudice either side, or "confuse and complicate the issues for the parties involved."  Id. (citation and internal quotation marks omitted); see also SBO Pictures, Inc. v. Does 1-20, No. 12 Civ. 3925, 2012 WL 2304253, at *2 (S.D.N.Y. June 18, 2012) ("Joinder should be used when it is convenient and enhances the efficiency of litigation but it need not be used when it is unhelpful.").

C.    DISTRICT COURT SPLIT

     Over the past year, a large number of civil actions about the illegal trading of pornographic films on BitTorrent have been filed in federal courts across the country.   These cases have led to inconsistent holdings regarding whether defendants who participated in the same swarm on BitTorrent and downloaded the same file satisfy the transaction-or-occurrence standard and can be properly joined.   Within this District alone, judges have reached different conclusions.

Some judges in this District have held that defendants can be joined,[2] at least in the initial stages of litigation, as long as the complaint is based on "specific factual allegations" connecting the defendants to the "same specific swarming transaction, or series of transactions." DigiProtect USA Corp. v. Does 1-240, 10 Civ. 8760, 2011 WL 4444666, at *3 n.3 (S.D.N.Y. Sept. 26, 2011). In Digital Sin 176, Judge Alison J. Nathan was presented with a case similar to the instant suit in which the plaintiff alleged that 176 individuals participated in the same swarm and downloaded the same copyrighted pornographic film using BitTorrent. She held that the defendants were properly joined, at least in the initial stage of litigation, because

> it is difficult to see how the sharing and downloading activity alleged in the Complaint — a series of individuals connecting either directly with each other or as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file — could not constitute a 'series of transactions or occurrences' for purposes of Rule 20(a).

Digital Sin 176, 279 F.R.D. at 244 (emphasis omitted); see

---

[2] The following cases held that joinder was proper, at least in the preliminary pre-trial stage: Digital Sin, Inc. v. Does 1-27, 12 Civ. 3873, 2012 WL 2036035 (S.D.N.Y. June 6, 2012) ("Digital Sin 27"); In re Adult Film Copyright Infringement Litig., No. 11 Civ. 7564, 2012 WL 1003581 (S.D.N.Y. Mar. 26, 2012); Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239 (S.D.N.Y. 2012) ("Digital Sin 176").

also In re Adult Film, 2012 WL 1003581, at *2 (holding that
joinder is proper when plaintiffs alleged that defendants
traded "the exact same file of a copyrighted work" in
swarm).

    Judges in other districts have permitted joinder in
similar cases based on the theory that the claims are
"logically related." See, e.g., Patrick Collins, Inc. v.
Does 1-21, No. 11 Civ. 15232, 2012 WL 1190840, at *6 (E.D.
Mich. Apr. 5, 2012); Maverick Entm't Grp., Inc. v. Does 1-
2115, 810 F. Supp. 2d 1, 12 (D.D.C. 2011); K-Beech, Inc. v.
Does 1-31, No. 12 Civ. 88, 2012 WL 1431652, at *2 (D. Md.
Apr. 24, 2012).   In Patrick Collins, the Court concluded
that the defendants' actions were logically related because
each defendant "affirmatively chose to download the same"
seed file, "utilize[d] other users' computers to download
pieces" of the same seed, and allowed his computer to be
used in the "infringement by other peers and [d]efendants
in the same swarm." 2012 WL 1190840, at *5.   Accordingly,
the   Court   held   that   these   actions   satisfied   the
transaction-or-occurrence standard and joinder was proper.
Id. at *9.

    In contrast, other judges in this District have held

that joinder is improper[3] in these cases because the plaintiff does no more than assert that "the defendants merely committed the same type of violation in the same way." Digital Sins 245, 2012 WL 1744838, at *2 (internal quotation marks removed); see also Zero Tolerance Entm't, 2012 WL 2044593, at *1 (same). Such an allegation does not support joinder because the Second Circuit Court of Appeals has held that "the fact that a large number of people use the same method to violate the law does not authorize them to be joined as defendants in a single lawsuit." Digital Sins 245, 2012 WL 1744838, at *2 (citing Nassau Ctny. Assoc. of Ins. Agents, Inc. v. Aetna Life & Casualty, 497 F. 2d 1151, 1154 (2d Cir. 1974)). Accordingly, in Digital Sins 245, Judge McMahon held that joining 245 John Does was improper because they each participated in "245 separate and discrete transactions" to access a file on BitTorrent, and there was no "concerted action" among them. 2012 WL 1744838, at *2; see also In re BitTorrent Adult Film, 2012 WL 1570765, at *11 ("[T]he bare fact that Doe clicked on a command to participate in the BitTorrent Protocol does not

---

[3] The following cases held that joinder was improper: Zero Tolerance Entm't, Inc. v. Does 1-45, No. 12 Civ. 1083, 2012 WL 2044593 (S.D.N.Y. June 6, 2012); SBO Pictures, Inc. v. Does 1-20, No. 12 Civ. 3925, 2012 WL 2034631 (S.D.N.Y. June 5, 2012), reconsid'n denied, 2012 WL 2304253; Digital Sins 245, 2012 WL 1744838.

mean that . . . [he was] part of the downloading by unknown hundreds or thousands of individuals across the country or across the world." (citation and internal quotation marks omitted)).  Based on the finding that joinder was improper and that "trying what are in essence 245 different cases together" would be unmanageable, Judge McMahon exercised her discretion under Rules 20(b), 21, and 42(b) to sever John Does 2-245 from the action.  Digital Sins 245, 2012 WL 1744838, at *3.

   In another BitTorrent case in this District, Judge Shira A. Scheindlin agreed with Judge McMahon's approach in Digital Sins 245 and noted there was no allegation that the defendants shared the file with one another, "as opposed to with other members of the same very large swarm," and that each defendant would likely assert individual and different defenses.   SBO Pictures, 2012 WL 2304253, at *2. Accordingly, Judge Scheindlin exercised her discretion to sever Does 2-20 because there were "no litigation economies to be gained" from trying twenty different cases together. Id. at *1.[4]

---

[4] Judges in districts across the country have also severed defendants in similar BitTorrent cases.   See, e.g., Liberty Media Holdings, LLC v. BitTorrent Swarm, 277 F.R.D. 669 (S.D. Fla. 2011); Hard Drive Prods., Inc. v. Does 1-30, No. 11 Civ. 345, 2011 WL 4915551 (E.D. Va. Oct. 17, 2011); Hard Drive Prods., Inc. v. Does 1-188, 809 F. Supp. 2d 1150 (N.D. Cal. 2011).

### III. **DISCUSSION**

A.   DISCRETIONARY SEVERANCE

As is apparent from the discussion above, there is a divide among district courts regarding whether joinder is proper in cases involving multiple John Doe defendants who allegedly traded the same copyrighted file while participating in the same swarm on BitTorrent.  The fact that multiple courts, in well-reasoned opinions, have arrived at opposing conclusions suggests that there is no clearly correct answer to this question.  Upon careful consideration of Next Phase's submission and the many opinions in similar cases, the Court need not reach a conclusion about whether permissive joinder is proper under Rule 20(a) in this case.  Instead, three practical considerations compel the Court to exercise its discretion to sever John Does 2-27.

First, severance is appropriate here because, once John Does are identified by their ISPs, it is very likely that each John Doe will assert different defenses, thereby adding factual and legal questions that are not common among all the defendants.  See, e.g., In re BitTorrent Adult Film, 2012 WL 1570765, at *12 (noting that "half-dozen" defendants have already raised "a panoply of

individual defenses . . . [which] far outweigh the common questions in terms of discovery, evidence, and effort required."); Digital Sins 245, 2012 WL 1744838, at *3 (explaining that "John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works" (citation and internal quotation marks omitted)). To evaluate these defenses, the Court would have to adjudicate separate motions and discovery disputes and make decisions based on evidence not common to all defendants. See Pacific Century Int'l, Ltd. v. Does 1-101, No. 11 Civ. 2533, 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011) (severing John Does 2-101 when John Does' individual defenses "would require the court to cope with separate discovery disputes and dispositive motions, and to hold separate trials, each based on different evidence"). As a result, case management and the litigation process for the 27 individual John Does would quickly become complicated and unmanageable. Moreover, joining 27 individual defendants would raise several procedural and logistical issues. For example,

> [E]ach Defendant would have the right to be present at
> every other Defendant's depositions — a thoroughly
> unmanageable and expensive ordeal. Similarly, pro se
> Defendants, who most likely would not e-file, would be

required to serve every other Defendant with a copy of
their pleadings and other submissions throughout the
pendency of the action at substantial cost.

Id.; see also In re BitTorrent Adult Film, 2012 WL 1570765,
at *12 (quoting Pacific Century and concluding that
"fundamental fairness and judicial economy dictate that
permissive joinder not be allowed").

Second, the Court recognizes that it is conceivable
that several John Does identified in this case did not
actually download the Motion Picture. See Digital Sin 176,
279 F.R.D. at 242 ("Plaintiff's counsel estimated that 30%
of the names turned over by ISPs are not those of
individuals who actually downloaded or shared copyrighted
material." (emphasis removed)). Even though Next Phase
believes it has correctly identified the alleged infringers
by tracking their IP addresses, an IP address does not
necessarily correlate to a particular alleged infringer
because several people may access the same IP address:

> [T]he assumption that the person who pays for Internet
> access at a given location is the same individual who
> allegedly downloaded a single sexually explicit film
> is tenuous, and one that has grown more so over time.
> An IP address provides only the location at which one
> of any number of computer devices may be deployed,
> much like a telephone number can be used for any
> number of telephones . . . Thus, it is no more likely
> that the subscriber to an IP address carried out a
> particular computer function — here the purported
> illegal downloading of a single pornographic film —
> than to say an individual who pays the telephone bill

made a specific telephone call.

In re BitTorrent Adult Film, 2012 WL 1570765, at *3.

Aside from the obvious concerns associated with catching so many potentially uninvolved individuals in the wide net of this litigation, there is also the prospect that, even if a John Doe did not download the Motion Picture, he may feel compelled to settle the lawsuit confidentially in order to avoid the embarrassment of being named as a defendant in a case about the alleged illegal trading of a pornographic film. See Digital Sin 176, 279 F.R.D. at 242 ("This risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading" pornography. (citation and internal quotation marks omitted)); MCGIP, LLC v. Does 1-149, No. 11 Civ. 2331, 2011 WL 4352110, at *4 n.5 (N.D. Cal. Sept. 16, 2011) ("[T]he subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle."). The Court will not facilitate such coercive settlements by casting such an unnecessarily wide net. See In re BitTorrent Adult Film, 2012 WL 1570765, at *10 ("[F]iling one mass action in order

- 14 -

to identify . . . doe defendants through pre-service discovery and [to] facilitate mass settlement is not what the joinder rules were established for." (citation and internal quotation marks omitted)).

Finally, the Court recognizes that, if the Motion Picture is considered obscene, it may not be eligible for copyright protection. See Liberty Media Holdings, LLC v. Swarm Sharing Hash File and Does 1-38, 821 F. Supp. 2d 444, 447 n.2 (D. Mass. 2011) (noting it is "unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement"). In Mitchell Bros. Film Grp. v. Cinema Adult Theater, 604 F. 2d 852 (5th Cir. 1979), a court stated for the first time that obscene works may be eligible for copyright protection: "there is good reason not to read an implied exception for obscenity into the copyright statutes." Id. at 854. However, since the Mitchell Bros. decision, judges across the country and within this district have reached different conclusions on this issue. Compare Devil Films, Inc. v. Nectar Video, 29 F. Supp. 2d 174, 177 (S.D.N.Y. 1998) ("Once a court has determined that copyrighted material is obscene, there seems no reason to require it to expend its resources on behalf of a plaintiff who it could as readily be trying for

a violation of the federal criminal law.") with Nova Prods., Inc. v. Kisma Video, Inc., Nos. 02 Civ. 3850, 02 Civ. 6277, 03 Civ. 3379, 2004 WL 2754685, at *3 (S.D.N.Y. Dec. 1, 2004) (agreeing with Mitchell Brothers decision and stating that obscenity does not provide defense to copyright infringement of pornography).  Accordingly, the Court recognizes that joining 27 defendants, a substantial number of whom may have no liability in this case, in a copyright infringement case when the copyright itself might be deemed invalid, could prove to be a costly and futile exercise for Next Phase and the Court, and a damaging an unnecessary ordeal for the John Does.

As a result, while the Court recognizes that the goal of joinder is to allow for the expeditious and convenient resolution of similar disputes, such a result will not be achieved in this case by joining John Does 2-27. Therefore, the Court, sua sponte, exercises its discretion to sever and dismiss, without prejudice, John Does 2-27 from the current action.

If Next Phase is able to produce new evidence that overcomes the difficulties of joining John Does 2-27 in this case, Next Phase may make a motion to join the defendants at that time.

- 16 -

B.   <u>MOTION FOR DISCOVERY</u>

Having severed John Does 2-27, the Court now considers whether to grant Next Phase's Motion for Discovery with respect to John Doe 1.   Next Phase requests expedited discovery because it can identify John Does only by requesting information from their ISPs with a court-ordered subpoena under Rule 45 of the Federal Rules of Civil Procedure.   Next Phase also notes that it is important to obtain this information quickly because ISPs routinely delete their information logs that contain this customer information.

A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when authorized by a court order.   <u>See</u> Fed. R. Civ. P. 26(d)(1). In this District, courts use a "flexible standard of reasonableness and good cause" when considering whether to grant such an order.   <u>Digital Sin 176</u>, 279 F.R.D. at 241. In similar cases involving BitTorrent and multiple John Doe defendants, courts have found good cause for early discovery when the plaintiff has presented a <u>prima facie</u> case of copyright infringement and statutory provisions prevent the plaintiff from identifying John Does without a court-ordered subpoena.   <u>See, e.g.</u>, <u>Digital Sin 27</u>, 2012 WL

2036035, at *4 (granting expedited discovery because it "is the only means by which [the plaintiff] . . . can identify those who allegedly violated its copyright"); Digital Sin 176, 279 F.R.D. at 241 (explaining that 47 U.S.C. §§ 522(5) and 551(c) prevent ISPs from disclosing identities of customers without court-ordered subpoena). Because Next Phase has alleged a prima facie case of copyright infringement[5] and it cannot identify John Doe 1 without a court-ordered subpoena, the Court agrees that there is good cause to allow for early discovery. Accordingly, the Court grants Next Phase's Motion for Discovery as to John Doe 1.

In addition, because of the high likelihood of false positives in this case and the sensitive nature of the subject matter, the Court issues a protective order for discovery. See Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."); see also Digital Sin 27, 2012 WL 2036035, at *4 (issuing protective order when "the nature of the copyrighted work in this case creates the possibility of

---

[5] Although the Court recognizes that the case law is unsettled regarding whether pornography may legitimately be copyrighted, for the limited purposes of this Motion for Discovery, the fact that Next Phase is the registered copyright owner of the Motion Picture satisfies the requirement of a prima facie showing of copyright infringement.

- 18 -

undue embarrassment and harm were a Doe defendant's name to be publicly, but erroneously, linked to the illegal downloading of the plaintiff's copyrighted work"). Therefore, the Court orders that the information released from the ISPs should be treated as confidential, may be used only for litigating the instant case, and must follow the protocols explained below.[6]

### IV. ORDER

It is hereby,

**ORDERED** that John Does 2-27 be **SEVERED** and **DISMISSED** without prejudice from this action; and

**ORDERED** that Motion for Discovery (Docket No. 5) is **GRANTED** with respect to John Doe 1; and it is further

**ORDERED** that, for purposes of the Motion for Discovery and, for any similar motions in future related cases[7] should Next Phase choose to re-file actions against any of the severed defendants, Next Phase must follow the protocol below:

---

6 Similar protocols were used in <u>Digital Sins 245</u>, 2012 WL 1744838, at *7, and <u>In re BitTorrent Adult Film</u>, 2012 WL 1570765, at *14.

7 <u>See</u> <u>Digital Sins 245</u>, 2012 WL 1744838, at *6 (noting that if plaintiff chooses to refile actions against severed John Does, plaintiff must refer actions to this Court "as related to a prior pending action seeking the same relief against the same party" under Rule 4(b)); Rule 4(b) of the Local Rules for the Division of Business among District Judges of the Southern District of New York ("If an action, case or proceeding, or one essentially the same, is dismissed and refiled, it shall be assigned to the same judge. It is the duty of every attorney appearing to bring the facts of the refiling to the attention of the clerk.")

1.  Subpoenas may not issue seeking the telephone numbers or email addresses of the individuals who are assigned a particular IP address.   Within seven days of service of each subpoena, the ISP shall reasonably attempt to identify the John Doe sued, and provide that John Doe (not plaintiff) with a copy of the subpoena and a copy of this order (which plaintiff must attach to the subpoena).   If an ISP is unable to determine, to a reasonable degree of technical certainty, the identity of the user of a particular IP address, it shall notify plaintiff's counsel in writing, so that a record can be kept for review by the Court.

2. An ISP may move to quash or otherwise object to any subpoena within 21 days.   Similarly, each potential defendant shall have 21 days from receipt of the subpoena from the ISP to move to quash or otherwise object to the subpoena.

3. Absent motions to quash, the ISPs shall produce the information sought to the Court, not to plaintiff, within 21 days after notifying each defendant as aforesaid.   Such submission shall be ex parte and under seal.   The information will be disclosed to plaintiff's counsel by the Court.   No such disclosure shall include any email addresses or telephone numbers.

4. Plaintiff may use the information disclosed, once it is received by plaintiff's counsel, only for the purpose of litigating the instant case.


**SO ORDERED.**


Dated:     New York, New York
           31 July 2012

                              VICTOR MARRERO
                              U.S.D.J.


- 20 -